# IN THE UNITED STATES BANKRUPTCY COURT
# FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: <br><br> DIRECTSTREAM, LLC, <br><br>           Debtor. <br><br> In re: <br><br> DIRECTSTREAM FEDERAL, LLC, <br><br>           Debtor. | Chapter 7 <br><br> Case No. 20-10534 (MFW) <br><br><br><br> Chapter 7 <br><br> Case No. 20-10535 (MFW) <br><br> **Hearing Date:  May 6, 2020 at 2:00 p.m. (ET)** <br> **Obj. Deadline:  April 28, 2020 at 4:00 p.m. (ET)** |

## OBJECTION TO MOTION OF SWOOP SEARCH, LLC FOR AN ORDER CONFIRMING EXTENT OF THE AUTOMATIC STAY

Third-party Brandon W. Freeman ("Freeman") objects to Swoop Search LLC's ("Swoop") motion for "an order confirming extent of the automatic stay as to a third party" ("Motion") with respect to Swoop's alleged litigation in Colorado against Freeman. Swoop's Motion is procedurally improper, factually incorrect, and legally unsupported.

*First*, Swoop's request for advice on the "automatic stay" is a nullity—without legal effect—because ***there is no pending litigation involving Freeman to which any automatic stay could apply.*** In fact, there is no pending litigation brought by Swoop against Freeman in Colorado at all. Surprisingly, in its 14 page motion, Swoop fails to inform this Court that the Colorado state court case referenced in Swoop's Motion is *closed*. Swoop's Motion, which specifically asks this Court to order that Swoop is "authorized to . . . continu[e] litigation against Brandon W. Freeman in the Colorado state court matter titled *DirectStream Federal, LLC v. Swoop Search, LLC*" must fail because the Colorado court closed that case on March 10, 2020, and there is therefore ***no pending state court matter titled DirectStream Federal, LLC v. Swoop***

*Search, LLC.* Swoop's Motion improperly requests relief from the wrong court at that wrong time in the wrong posture.

*Second*, even if somehow this Court could end run the Colorado state court's decision to close its case, Swoop's Motion should nevertheless be denied. As this Court previously recognized, an automatic stay is appropriately extended to non-debtor third parties where "there is such identity between the debtor and third party defendant that the debtor may be said to be the real party defendant and that a judgment against the third-party defendant will in effect be a judgment or finding against the debtor." *In re Uni-Marts*, 399 B.R. 400, 416 (Bankr. D. Del. 2009) (Walrath, J.) (quoting *A.H. Robins Co., Inc. v. Piccinin*, 788 F.2d 994, 999 (4th Cir. 1986). In its Colorado complaint, Swoop itself alleges identity between Freeman and Debtors, and seeks to recover from both jointly and severally. Indeed, each and every one of the seven claims for relief Swoop asserts in Colorado state court (including those alleged against Freeman) was also asserted against the Debtors, and Swoop has declined to bring a separate action against Freeman alone. Allowing Swoop to pursue its claims against Freeman in Colorado therefore necessarily implicates Debtors and defeats the purpose of the automatic stay. Accordingly, if the Colorado court reopened the case (which is has not, and which Swoop has not requested that it do), it would be appropriate for this Court to extend the stay to cover Swoop's allegations against Freeman.

*Third*, if the Colorado state court reopened the case (which it has not), and this Court extended the automatic stay to cover Freeman (which would be appropriate), Swoop would not have cause to lift the stay. The Colorado litigation was still in its infancy when the Colorado state court judge closed the case: Freeman's Motion to Dismiss was still pending, Freeman had not yet even answered Swoop's third-party claims, discovery had not advanced (other than preliminary

exchanges of documents), and not a single deposition had been taken. Accordingly, the stay does not impose a hardship on Swoop. The prejudice to the Debtor's estate of allowing the case to proceed, in contrast, could be significant, as the Debtor's estate's assets include its claims against Swoop. Those claims, if the Trustee elects to pursue them, could be subject to collateral estoppel based on the Colorado litigation.

For each of these reasons, third-party Freeman respectfully objects to Swoop's Motion for an Order Confirming Extent of the Automatic Stay as to Third Party, and requests that this Court deny it.

## BACKGROUND

1. On August 9, 2019, Debtor DirectStream Federal, LLC ("DS Federal") sued Swoop in Colorado state court for breach of a Teaming Agreement between the two parties, seeking damages. Ex. A, Declaration of S. Campbell at ¶ 2; Ex. B, DirectStream Federal's Complaint and Jury Demand.

2. On September 18, 2019, Swoop filed an answer to DS Federal's complaint, and also brought counterclaims and third-party claims against Debtor DirectStream, LLC ("DirectStream," together with DS Federal, the "Debtors") and Freeman based on the same nucleus of facts. Ex. A at ¶ 3; Ex. B to Swoop's Motion.

3. Specifically, Swoop brought seven causes of action. Swoop's four primary causes of action were breach of contract and breach of the implied duty of good faith and fair dealing claims, asserted directly against DS Federal. Swoop also asserted each of those four claims indirectly against DirectStream and Freeman as "alter egos" of DS Federal. Ex. B to Swoop's Motion at 30-34. Swoop's fifth and sixth causes of action were for intentional interference with contract, and Swoop asserted them directly against Freeman (Count 5) and DS Federal and Freeman (Count 6), and indirectly against DirectStream as an alter ego of Freeman and DS

3

Federal. *Id*. at 34-35 Finally, Swoop asserted its seventh cause of action, for breach of fiduciary duty, directly against Freeman, and indirectly against DirectStream and DS Federal. *Id*. at 35-36. Swoop's claims and the parties Swoop asserted each claim against are summarized in the following chart:

| Cause of Action | Direct Defendant(s) | Indirect/Alter Ego Defendant(s) |
|---|---|---|
| **Count 1:** **Breach of Contract** | DS Federal | DirectStream and Freeman |
| **Count 2:** **Breach of the Covenant of Good Faith and Fair Dealing** | DS Federal | DirectStream and Freeman |
| **Count 3:** **Breach of Contract** | DS Federal | DirectStream and Freeman |
| **Count 4:** **Breach of the Covenant of Good Faith and Fair Dealing** | DS Federal | DirectStream and Freeman |
| **Count 5:** **Tortious Interference** | Freeman | DirectStream |
| **Count 6:** **Tortious Interference** | DS Federal and Freeman | DirectStream |
| **Count 7:** **Breach of Fiduciary Duty** | Freeman | DirectStream and DS Federal |

   4.  In short, each and every one of Swoop's claims was brought against Debtors. Swoop has not dismissed any of its claims as to the Debtors, nor has Swoop dismissed either of the Debtors from its lawsuit. Ex. A at ¶ 5.

5. Further, Swoop directly alleged in its Counterclaims that "[t]here is such a unity of interest and ownership that the separate personalities of DS Federal, Freeman, and [DirectStream] no longer exist . . . ." Ex. B to Swoop's Motion at 30.

6. On November 18, 2019, Freeman filed a Motion to Dismiss Swoop's third-party claims. Although Freeman's motion was fully briefed as of December 20, 2019, the court did not rule on the Motion before it closed the case. Ex. A at ¶ 7.

7. On March 5, 2020, DS Federal and DirectStream filed a bankruptcy notice in the Colorado state court action. Ex. A at ¶ 8; Ex. C, Notice of Bankruptcy.

8. On March 9, 2020, the Colorado state court issued an Order administratively closing the case. Ex. A at ¶ 9; Ex. D, Order: Notice of Bankruptcy.

9. On March 10, 2020, the Colorado state court closed the case and vacated all conferences and trial dates in the matter. Ex. A at ¶ 10; Ex. E.

10. On March 12, 2020, in response to Swoop's "Motion for Clarification" regarding the case's closure, the Colorado state court issued the following statement: "*To the extent* that the court has jurisdiction over any party that matter can go forward." Ex. F, Order: Motion for Clarification (emphasis added); Ex. A at ¶ 11.

11. To date, Swoop has not asked, nor has the court stated, over which party the court might have jurisdiction. Swoop has never moved the Colorado state court to reopen the case. Swoop has never briefed the issue of "jurisdiction." And Swoop has never made any effort to demonstrate which "matter can go forward." The court's March 12, 2020 Order is the final docket entry. The case remains closed. Ex. A at ¶ 12; Ex. E.

12. Aside from early pleadings and an initial exchange of documents, the Colorado action never got off the ground. No party in the case ever took a single deposition. Freeman

never responded (nor was he ever obligated to respond) to any interrogatory or request for admission. Indeed, because the court closed the case before ruling on Freeman's motion to dismiss, Freeman never even filed (and was never obligated to file) an answer to Swoop's allegations. Ex. A at ¶ 13.

**ARGUMENT**

I. **Swoop's Motion Is Procedurally Improper Because No Action Is Pending Against Freeman**

First, Swoop's Motion should be denied because it is not ripe. *See Armstrong World Industries, Inc. by Wolfson v. Adams*, 961 F.2d 405, 411 (3d Cir. 1992) (noting that the United States Constitution "case or controversy requirement" "stands as a direct prohibition on the issuance of advisory opinions," and explaining that the ripeness doctrine's "basic rationale is to prevent the courts, through avoidance of premature adjudication, from entangling themselves in abstract disagreements"). Attempting (for some unknown reason) to end-run the Colorado state court, Swoop asks this Court to opine on the scope of a "stay" that does not exist. Not once in Swoop's 14 page motion do they mention that the Colorado state court *closed* the relevant case. As of March 10, 2020, Hon. Judge Weishaupl vacated all dates and closed the docket. There is no open litigation proceeding against Freeman (or Debtors) in Colorado to which this Court need or should opine.

Swoop's Motion repeatedly misleads this Court on this point. Ignoring the actual case docket sheet, Swoop's Motion openly asserts that "[t]he Colorado Litigation, including Swoop's third-party claims against Freeman, remains pending." Motion at 6. Swoop then devotes a section of its brief to arguing that this Court should rule that there is no automatic stay as to Freeman because neither the Trustee, nor Debtors, nor Freeman initiated a proceeding in this Court seeking to extend the stay to Freeman. *Id*. at 8-9.

6

But as should be obvious, no one sought to extend the stay *because there is no active litigation against Freeman that needs to be stayed.* As noted above, the Colorado state court (appropriately) closed the case on March 10, 2020.

Faced with this irrefutable fact, Swoop directs this Court to the Colorado state court's statement that the litigation could continue "to the extent" the court has jurisdiction over any party. Aside from stating black-letter law that a court can only hear cases over which it has jurisdiction, the court's statement at most suggests that it might reopen the case if appropriate and perhaps invites the parties to tell it over which parties jurisdiction remains. But no party—including Swoop—filed a motion to reopen the case, or otherwise sought to demonstrate to the Colorado state court that it should proceed with the matter. Nor has the court determined that it retains jurisdiction over any party, including Freeman, Debtors, or Swoop for that matter. Accordingly, the case has remained closed, with no activity, for nearly two months.

Instead of filing a motion to reopen in Colorado, Swoop's Motion asks this Court to (a) step in to the Colorado litigation, (b) reverse the Colorado state court's decision to close the case, (c) order the Colorado state court judge to reopen the case, and (after the case is active) (d) declare that the Colorado state court has "jurisdiction" over Freeman. Then at that point, and only then, Swoop asks this Court to (e) confirm the extent of the automatic stay, and (f) order that the automatic stay should not apply to Freeman. A review of Swoop's proposed order attached to its Motion makes clear the scope of its request, which demands this Court declare: "Swoop is authorized to take any and all actions necessary to effectuate the relief granted pursuant to this Order, including continuing litigation against Brandon W. Freeman in the Colorado state court matter titled *DirectStream Federal, LLC v. Swoop Search, LLC*, Case No. 2019-CV-31895." This bald attempt to entice this Court into overstepping its jurisdictional

boundaries and taking control of a Colorado state court's docket is improper and wholly unnecessary. If Swoop seeks relief in the Colorado state court, it should have sought relief there.

In short, Swoop is improperly asking this Court to rule on an issue that is not ripe for determination here. This Court should decline that invitation and deny Swoop's Motion.

## II. A Stay of Swoop's Litigation Against Debtors and Freeman Is Appropriate.

Even if this Court considers the substance of Swoop's Motion (which it should not), the Court should deny it on its merits. Swoop's Motion misstates the law and misrepresents the facts.

As a preliminary matter, Swoop's Motion simply misreads the law. Swoop opens its argument with the blanket statement that "Courts have uniformly recognized that the bankruptcy stay does not apply to the debtor's owners, officers, or shareholders," citing this Court's decision in *Uni-Marts*, 399 B.R. 400. But as this Court is aware, *Uni-Marts* does not hold that a bankruptcy stay can never apply to an action against a debtor's owner, officer, or shareholder.[1] Rather, as Swoop's Motion ultimately concedes, *Uni-Marts* openly recognizes that "courts may extend the automatic stay to non-debtor third parties" under appropriate circumstances. Motion at 8, *citing Uni-Marts*, 399 B.R. at 416; *see also In re American Film Technologies, Inc.*, 175 B.R. 847 (Bankr. D. Del. 1994) ("numerous bankruptcy courts have issued preliminary injunctions . . . staying the prosecution of actions against non-debtor defendants who were officers and/or directors of the debtor defendants").

In particular, *Uni-Marts* quotes the Fourth Circuit's decision in *A.H. Robins Co., Inc. v. Piccinin* as "the seminal case on the issue," finding that an automatic stay is appropriately extended to non-debtor third parties where "there is such identity between the debtor and third

---

[1] The sentence Swoop appears to misrepresent here actually references "sureties, guarantors, co-obligers, or others with a similar legal of factual nexus to the debtor"—***not*** owners, officers, or shareholders. *See Uni-Marts*, 399 B.R. at 415.

party defendant that the debtor may be said to be the real party defendant and that a judgment against the third-party defendant will in effect be a judgment or finding against the debtor." *Id.* (quoting *A.H. Robins Co. Inc.*, 788 F.2d at 999 (4th Cir. 1986)).

That is precisely the nature of Swoop's claims against Debtors and Freeman in this case. Swoop specifically alleges, in ¶¶ 155-56 of its Colorado counterclaims, that "[t]here is *such a unity of interest and ownership that the separate personalities of DS Federal, Freeman, and [DirectStream] no longer exist* . . . ." Ex. B to Motion, 30. Indeed, *every count* in Swoop's complaint is alleged against a Debtor—directly or indirectly as an alter ego, and often both. And, indeed, *every count* in Swoop's counterclaims specifically references and incorporates the allegations in ¶¶ 155-56 in support of its claim that the parties are effectively identical such that a judgment against a Debtor is equivalent to a judgment against Freeman, and a judgment against Freeman is equivalent to a judgment against one or both Debtors:

| Cause of Action (Primary Defendant) | ¶ | Statement |
|---|---|---|
| **Count 1: Breach of Contract (DS Federal)** | 155-156 | Freeman and DS are also liable for DS Federal's breach of contract under the veil piercing/alter ego doctrine. There is such a unity of interest and ownership that the separate personalities of DS Federal, Freeman, and DS no longer exist and circumstances here are such that adhering to the fiction of separate corporate existence would promote injustice or inequity. |
| **Count 2: Breach of Covenant of Good Faith (DS Federal)** | 170 | For the reasons provided above in paragraphs 155-162, Freeman and DS are also liable for DS Federal's breach of contract under the veil piercing/alter ego doctrine. |
| **Count 3: Breach of Contract (DS Federal)** | 178 | For the reasons provided above in paragraphs 155-162, Freeman and DS are also liable for DS Federal's |

| | | |
|---|---|---|
| | | breach of the covenant of good faith and fair dealing under the veil piercing/alter ego doctrine. |
| **Count 4: Breach of Covenant of Good Faith (DS Federal)** | 185 | For the reasons provided above in paragraphs 155-162, Freeman and DS are also liable for DS Federal's breach of the covenant of good faith and fair dealing under the veil piercing/alter ego doctrine. |
| **Count 5: Tortious Interference (Freeman)** | 194 | For the reasons provided above in paragraphs 155-162, DS is also liable for Freeman's intentional interference with contract under the veil piercing/alter ego doctrine. |
| **Count 6: Tortious Interference (Freeman)** | 200 | For the reasons provided above in paragraphs 155-162, DS is also liable for the intentional interference with contract by Freeman and DS Federal under the veil piercing/alter ego doctrine. |
| **Count 7: Breach of Fiduciary Duty (Freeman)** | 208 | For the reasons provided above in paragraphs 155-162, DS Federal and DS are also liable for Freeman's breach of fiduciary duties under the veil piercing/alter ego doctrine. |

It is unsurprising, then, that Swoop's complaint also seeks to hold Freeman and Debtors jointly and severally liable. Ex. B to Motion at 37 (seeking "[a]n award of monetary damages in an amount to be determined at trial, including any applicable interest in Swoop's favor and against DS Federal, DS, and Freeman (jointly and severally)").

In a bald effort to skirt the fact that its own claims belie its current request, Swoop's Motion pretends that its claims are something other than what they are, incomprehensibly asserting that "[w]hile Swoop's third-party complaint lists the Debtors as co-defendants on certain claims against Freeman, Swoop's claims against Freeman are independent." Motion at 9. But Swoop provides no support for this plainly false assertion. *Every* claim Swoop asserts against a Debtor, it also asserts against Freeman. And every claim Swoop asserts against

10

Freeman, it asserts against one or both Debtors. Moreover, the claims, being alter ego claims, are clearly *dependent*—not independent. For example, Swoop's four primary causes of action are brought derivatively against Freeman only in his supposed capacity as Debtor DS Federal's alter ego. Accordingly, a pre-condition of finding Freeman liable on *any* of these four causes of action is a finding first that Debtor DS Federal is liable.[2]

In short, the "Basis for Relief" section of Swoop's current Motion misleadingly reads as though Swoop has dismissed all four of its breach of contract and breach of the implied duty of good faith and fair dealing claims, and dismissed both Debtors, from the Colorado litigation— leaving only direct claims against Freeman for tortious interference and breach of fiduciary duty, with no alter ego claims. Motion at 7. ***But Swoop has done no such thing***. Instead, Swoop is seeking to prosecute all seven causes of action, which necessarily implicates the interests of all defendants, including Debtors.

Moreover, it is appropriate to expand an automatic stay to third-parties where, as here, the third-party defendant's liability arises from the debtor's actions, and the debtor will be forced to defend those actions. *In re W.R. Grace & Co.*, 386 B.R. 17 (Bankr. D. Del. 2008) (extending automatic state to third party where the third party's "liability is alleged to arise from its dealings with Debtors, implicates Debtors' insurance, and defense of the [action by third-party] would require Debtors to defend those actions").

Revealingly, when purporting to describe how "contractual obligations and fiduciary duties owed to Swoop were breached," even Swoop's present Motion reverts to allegations against the Debtors, only paying lip service to Freeman:

---

[2] Swoop also admits in its Motion that it "intends to file a proof of claim in the Debtors' bankruptcy cases to seek recovery of its claims against them." Motion at 10. This highlights the impropriety and injustice of Swoop's position: it will seek to recover from Debtors in one venue, and Freeman in another, *on the same claims*. This sort of double recovery is improper.

11

| ¶ | Allegation |
|---|---|
| 9 | In early 2019, *DS Federal* began to breach its duties to Swoop under both the MS FURY and INTREPID Agreements. *DS Federal* ultimately failed, and at times outright refused, to execute required deliverables under both contracts. Swoop has alleged that Freeman *directed DS Federal* to breach its contracts with Swoop. |
| 10 | Freeman and the Debtors also acted in bad faith. *For instance, DS Federal* not only failed to deliver its technology on schedule, but entirely failed to appear for a formal government test demonstration, despite confirming it would attend the demonstration just a few days prior. *The Debtors'* bad faith antics led Rincon to issue a stop work order on MS FURY, irrevocably harming Swoop's financial expectations under its contract with Rincon, and seriously damaging Swoop's reputation and goodwill with the Government. |
| 11 | A few months after the stop work order, Bottum and a special Government employee (Terry Halvorsen of Samsung Electronics) met with Freeman to secure his assurance that DS Federal would execute its obligations under the INTREPID Agreement. Freeman assured Bottum and Halvorsen that DS Federal would perform. Almost immediately thereafter, Freeman made clear to Swoop that DS Federal would not perform. To date, *DS Federal* has refused to work on any task for the second phase of the INTREPID Agreement. |
| 12 | Additionally, *Freeman and Debtors* actively interfered with Swoop's contract with Rincon on MS FURY. Freeman and his entities attempted to circumvent Swoop and work directly with Rincon, thereby encouraging Rincon to breach its contract with Swoop. |
| 13 | Freeman and his entities have also made false or misleading representations to the Government designed to destroy Swoop's reputation. *For example, an officer of Debtors* sent an email to Government representatives on August 13, 2019, misrepresenting the INTREPID Agreement's terms. This directly contradicted previous communications to Swoop and caused serious damage to Swoop's reputation. People within the Government have expressed to Swoop that it will be extremely difficult for Swoop to recover its reputation and prospects with the Government in light of Debtors' and Freeman's actions. |

As is clear from these allegations, Swoop's actual case (to extent it has one) is focused on the actions of Debtors, not Freeman. Freeman's alleged liability primarily arises through the actions of Debtors, and Debtors and Debtors' officers will be forced to defend their actions in any trial against Freeman.

In sum, even if the Colorado litigation proceeded, extending the stay to Freeman would be appropriate because Swoop (1) alleges identity between the Debtor and the third party defendant, (2) brings each and every claim against one or both Debtors, (3) refuses to dismiss Debtors or its primary claims against Debtors from the case, and (4) through its allegations, treats Debtors as the real party in interest. Freeman's purported liability arises primarily through the Debtors' actions. Accordingly, the Colorado state court was correct to close the case, and this Court should not intervene.

### III.    Swoop Does Not Have Cause to Lift the Stay

Finally, there is no cause to grant Swoop relief from the automatic stay.

As explained above, this Court has not had to issue a stay, because there is no pending litigation. The remedy Swoop is seeking is actually for this Court to reopen the Colorado litigation, a remedy that this Court cannot grant and, regardless, Swoop should have sought in Colorado.

In any case, however, lifting the stay (or reopening the case) at this stage is not warranted. As Swoop notes, this court has employed a three-prong balancing test to determine whether to lift a stay: (1) whether any great prejudice to either the bankrupt estate or the debtor will result from continuation of the civil suit; (2) whether the hardship to the non-bankrupt party by maintenance of the stay considerably outweighs the hardship to the debtor; and (3) the probability of the creditor prevailing on the merits. *In re Rexene Products Co.*, 141 B.R. 574, 596 (Bankr. D. Del. 1992).

First, the risk of prejudice to the estate is high if the Colorado state court case goes forward at this time. DirectStream Federal's lawsuit against Swoop, which seeks damages for breach of contract, may be a significant asset of the estate. The Trustee therefore must be given fair opportunity to evaluate that claim, and determine whether, where, and how to litigate it.

Swoop's proposed litigation against Freeman in Colorado arises out of the identical nucleus of facts as Debtor's potential claims against Swoop, and involves the exact same parties. If litigation proceeds in Colorado, as explained above, it will necessarily implicate Debtors' claims and defenses, Debtors will be compelled to participate, and collateral estoppel will likely apply. *See*, *e.g.*, *Central Bank of Denver N.A. v. Mehaffy, Rider, Windholz & Wilson*, 940 P.2d 1097, 1101 (Colo. App. 1997) (collateral estoppel bars re-litigation of issues where "(1) the issue is identical to an issue actually and necessarily adjudicated at a prior proceeding; (2) the party against whom estoppel is asserted is a party or in privity with a party in the prior proceeding; (3) there was a final judgment on the merits; and (4) the party against whom estoppel is asserted had a full and fair opportunity to litigate the issue in the prior proceeding").

As this Court has recognized, staying cases against non-debtor officers and directors is often appropriate where collateral estoppel may affect the estate's claims. *See In re American Film Technologies, Inc.*, 175 B.R. 847 (Bankr. D. Del. 1994) ("numerous bankruptcy courts have issued preliminary injunctions, on collateral estoppel grounds, staying the prosecution of actions against non-debtor defendants who were officers and/or directors of the debtor defendants") (citing cases). That is a plain and significant risk here. As noted above, for example, to recover on any of the four primary claims in its Complaint, the Colorado court would "necessarily and actually" have to determine that Debtor DS Federal breached its contract with Swoop, or breached its implied contractual duty of good faith and fair dealing. Either finding could

preclude the estate from recovering from Swoop on its breach of contract claim. *See, e.g., Western Distributing Company v. Diodosio*, 841 P.2d 1053 (Colo. 1992) (elements of a breach of contract claim in Colorado require a plaintiff to prove "that he substantially performed his part of the contract").

Second, the "hardship" to Swoop of staying the case is negligible. In its Motion, Swoop claims that it is "in the middle of completing discovery as to its clams against Freeman." Motion at 13. But Swoop's claim is (yet again) demonstrably false. Far from having been "in the middle of completing discovery," Freeman ***had not yet even filed an Answer*** when the Colorado court closed the case. In fact, the only discovery exchanged consisted of early productions of documents. Freeman has not served or responded to a single interrogatory or request for admission. Nor has a single deposition been taken by any party. And no party had ever complained to the court about any of this.

Finally, Swoop has not (and cannot) show that it is "likely to prevail on the merits." Before the Colorado case closed, Freeman had filed a motion to dismiss for failure to state a claim. As that motion was never ruled upon, Swoop cannot even argue that it survived that. Further, Swoop's Motion contains ***no facts or evidence*** supporting its argument of likely success. Instead, Swoop just repeats the unsupported allegations contained in its complaint—that Freeman somehow, in bad faith, interfered with Swoop's contracts or breached a fiduciary duty to Swoop. Motion at 13. Simply filing a complaint—particularly one that has not even passed the test of a motion to dismiss for failure to state a claim—does not demonstrate a likelihood of success on the merits.

40000/0600-20323000v1

Accordingly, even if a stay were in place, all relevant factors demonstrate there would be no cause to lift that stay in this case. And there is certainly no cause for this Court to order the Colorado state court to reopen the litigation.

WHEREFORE, third-party Brandon Freeman respectfully objects to the relief requested in Swoop's Motion for an Order Confirming Extent of the Automatic Stay as to Third Party, and requests that this Court deny that relief.

Dated: April 28, 2020
Wilmington, Delaware

COLE SCHOTZ P.C.

*/s/ Norman L. Pernick*
Norman L. Pernick (No. 2290)
500 Delaware Avenue, Suite 1410
Wilmington, DE 19801
Telephone: (302) 652-3131
Facsimile: (302) 652-3117
npernick@coleschotz.com

-and-

GIBSON, DUNN & CRUTCHER LLP
Robert C. Blume, P.C. (*Pro Hac Vice* Pending)
M. Scott Campbell (*Pro Hac Vice* Pending)
1801 California, Suite 4200
Denver, CO 80202-2642
Telephone: (303) 298-5700
Facsimile: (303) 313-2846
rblume@gibsondunn.com
scampbell@gibsondunn.com

*Counsel to Third Party Brandon W. Freeman*