**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| In re: | Chapter 7 |
| DIRECTSTREAM, LLC, | Case No. 20-10534 (MFW) |
| Debtor. | |
| In re: | Chapter 7 |
| DIRECTSTREAM FEDERAL, LLC, | Case No. 20-10535 (MFW) |
| Debtor. | **Hearing Date: September 16, 2020 at 2:00 p.m. (ET)** **Objection Deadline: September 10, 2020 at 4:00 p.m. (ET) (extended by agreement)** |

**CONSOLIDATED OPPOSITION OF FG SRC LLC TO MOTIONS OF INTEL**
**CORPORATION AND XILINX, INC. TO (I) STAY PATENT INFRINGEMENT**
**ACTIONS PURSUANT TO SECTION 362(a) OR SECTION 105(a) OR**
**(II) MODIFY AUTOMATIC STAY**

FG SRC LLC ("SRC") files this consolidated opposition (the "Consolidated

Opposition") to the following:

    a. *Motion of Intel Corporation for an Order (I) Staying Patent Infringement Action Pursuant to Section 362(a) or Section 105(a) or (II) Modifying the Automatic Stay and Granting Related Relief* [Docket No. 51 in Case No. 20-10534; Docket No. 46 in Case No. 20-10535] (the "Intel Motion"); and

    b. *Motion of Xilinx, Inc. for an Order (I) Staying Patent Infringement Action Pursuant to Section 362(a) or Section 105(a) or (II) Modifying the Automatic Stay and Granting Related Relief* [Docket No. 53 in Case No. 20-10535; Docket No. 48 in Case No. 20-10535] (the "Xilinx Motion" and together with the Intel Motion, the "Stay Motions").

In support of this Consolidated Opposition, SRC respectfully states as follows:

**Preliminary Statement**

1.      Intel Corporation ("Intel") and Xilinx, Inc. ("Xilinx" and, together with Intel, "Movants") ask the Court for: (i) a determination that the automatic stay applies to bar the continuation of patent Infringement Actions (defined herein) against them brought by SRC; or (ii) for an order enjoining the continuation of the Infringement Actions pursuant to section 105(a) of the Bankruptcy Code.

2.       The Trustee and SRC have reached a settlement, subject only to Court approval, that releases all of the estates' claims against SRC to avoid and recover the Patents referenced in the Stay Motions and moot the Stay Motions entirely.

3.      The automatic stay is inapplicable because the Infringement Actions are not against the Debtors nor do they implicate property of the estate. Movants cite no authority supporting their argument that the *possibility* of the chapter 7 trustee seeking to avoid the transfer of the underlying patents to SRC is sufficient to make the patents property of the estate and implicate the automatic stay. If Movants' argument were accepted, third parties acquiring property from a debtor would be stayed from enforcing their interests in such property against non-debtors, upon the mere allegation by the non-debtor defendant that a trustee *might* bring an avoidance action to recover the property.  Numerous cases have held the stay does not apply under these circumstances.

4.      Similarly, Movants have cited no legal authority for a non-debtor third-party to seek extension of the stay for itself under section 105.  Moreover, Movants have not cited authority for extension of the stay to a non-debtor third-party in a chapter 7 proceeding where no reorganization is possible, nor have they provided any legal or factual basis to carry their burden

2

to prove that unusual circumstances exist to warrant extension of the stay to protect themselves from prosecution of the Infringement Actions.

5.     Movants have failed to allege, let alone demonstrate, how SRC's continued prosecution of the Infringement Actions will have an actual adverse impact on any reorganization efforts, when the Debtors are liquidating in chapter 7 proceedings.   In fact, even if the settlement is not approved, continued prosecution of the Infringement Actions against Movants will advance rather than impede the estates' interests by developing the case against Movants if the Trustee seeks to and is successful in avoiding the transfer of the Patents.  In addition, the chapter 7 trustee will be in a better position to determine the value in seeking avoidance the longer the litigation progresses.  Moreover, the pressure brought upon Movants by the Infringement Actions could facilitate a global settlement involving SRC, the Trustee and Movants that results in a distribution to the estates.

6.     The Stay Motions are an attempt to delay the Infringement Actions (defined below) to enable an attack by Movant Intel on the patents in an alternative forum-- the Patent Trial and Appeal Board ("PTAB") via a process called inters partes review ("IPR"), where the patent challenger has a far better chance to invalidate the patents.

7.     At the PTAB, the burden of proof to invalidate a patent is preponderance of the evidence while in district court it requires a showing of clear and convincing evidence. *See*  35 U.S.C. § 316(e) (setting burden for IPR proceedings); *Microsoft Corp. v. I4I Ltd. P'ship*, 564 U.S. 91, 95, 131 S. Ct. 2238, 2242, 180 L. Ed. 2d 131 (2011) (holding that 35 U.S.C. § 282 requires that an invalidity defense be proved by clear and convincing evidence). Additionally, in the PTAB there are no Article III judge and no jury. Trial Practice Guide, 77 Fed. Reg. 48756, 48768 (Aug. 14, 2012) ("Each party will be afforded an opportunity to present their case before

3

at least three members of the Board."). It has been described as a "patent death squad" in many publications, with an effective kill rate of patents between 75% to 85%. *See, e.g.* Susan Decker, *Apple Likes Patent 'Death Squad.' Allergan Pays to Avoid It,* Bloomberg Tech (Sept. 20, 2017), https://www.bloomberg.com/news/articles/2017-09-20/apple-likes-the-patent-death-squad-allergan-pays-to-avoid-it; Rob Sterne & Gene Quinn, PTAB Death Squads: Are All Commercially Viable Patents Invalid, IP Watchdog (Mar. 24, 2014) ("These bleak statistics have lead Federal Circuit Chief Judge Randall Rader to at the AIPLA annual meeting in October 2013 call the PTAB "death squads killing property rights."), https://www.ipwatchdog.com/2014/03/24/ptab-death-squads-are-all-commercially-viable-patents-invalid/id=48642/; SUCCESS Act Letter (Nov. 11, 2019), https://usinventor.org/5029-success-act-letter/#:~:text=And%20with%20stats%20showing%20the,success%20at%20the%20Patent%20Office (referencing statistics).

8.    The PTAB under new guidance may now decline to accept invalidity challenges if the district court case is set for trial before the IPR would be concluded, which is the case here. *Apple Inc. v. Fintiv, Inc.*, IPR2020-00019, Paper 15 at 12-13 (PTAB May 13, 2020) (precedential decision denying IPR institution in part because the PTAB's final written decision was scheduled two months after the district court trial).[1] So instead of seeking a stay to preserve assets for the estate, the Movants are seeking to destroy the assets so neither SRC nor the estates can obtain a recovery for the Movants' infringement. Granting the requested stays would harm, rather than aid the estates.

---

[1] A true copy of the *Fintiv* decision is attached to the Declaration of Ari Rafilson ("Rafilson  Decl.") filed concurrently herewith, as Exhibit A.

**Background**

**A.      General Background.**

9.      On March 5, 2020 (the "Petition Date"), DirectStream, LLC ("DS") and

DirectStream Federal, LLC ("DS Federal" and, together with DS, the "Debtors") each

commenced cases under chapter 7 of the Bankruptcy Code.

10.     Don A. Beskrone was appointed interim chapter 7 trustee and continues to serve

as the Debtor's chapter 7 trustee (the "Trustee").

11.     SRC is the majority shareholder of DS.  DS owns 100% of the equity interests in

DS Federal.

**B.      The Patents.**

12.     Prior to the Petition Date, SRC made loans to DS in exchange for a revolving

convertible promissory note secured by all of the Debtor's assets (the "Note").

13.     On January 22, 2020, SRC foreclosed (the "Foreclosure") on all of the Debtors'

personal property, including the 867 patent, 311 patent[2], and the income, profits or proceeds of

the foregoing.  At the time of the Foreclosure, the principal balance on the Note was

$46,653,635.19. Accrued interest was $895,848.27.

14.     SRC credit bid $22 million for the Property, which was valued at $22 million on

the Debtor's Statement of Financial Affairs, leaving a deficiency of over $25 million. *See* D.I. 3

at 7. As of the Petition Date, the Debtor owed SRC $26,089,406.59 on account of that deficiency

under the Note. DS's Schedule D, D.I. 2 at 10.

---

[2] The terms 876 patent and 311 patent shall have the meanings given to them in the Stay Motions.

15.     In accordance with the Foreclosure and pursuant to that certain Patent Assignment Agreement dated as of January 22, 2020, the Debtor assigned the Property, including the 867 patent and the 311 patent (together the "Patents") to SRC.

**C.     The Patent Infringement Litigation.**

16.     On April 24, 2020, SRC commenced a patent infringement action against Intel in the United States District Court for the Western District of Texas. *See FG SRC LLC v. Intel Corporation*, Case No. 20-cv000601-LPS (D. Del. April 24, 2020) (the "Intel Infringement Action") alleging infringement of the 867 patent.  The Intel Infringement Action is currently pending before Judge Albright.

17.     On April 30, 2020, SRC commenced a patent infringement action against Xilinx (together with Intel, "Movants") in the United States District Court for the District of Delaware, *see FG SRC LLC v. Xilinx, Inc.*, Case No. 20-cv000601-LPS (D. Del. April 30, 2020) alleging infringement of both the 867 patent and the 311 patent (the "Xilinx Infringement Action" and, together with the Intel Infringement Action, the "Infringement Actions").

18.     The Intel Infringement Action is currently pending before Judge Albright in the United States District Court for the Western District of Texas. On August 10, 2020, Movant Intel filed an IPR petition seeking to invalidate the 867 patent. *Intel v. SRC*, IPR2020-01449, Paper No. 1. Intel did not seek a stay in the district court based upon the IPR petition because Judge Albright routinely denies such stays, and has stated his belief in the Seventh Amendment right to a jury trial as a reason for doing so. *Continental Intermodal Group - Trucking LLC v. Sand Revolution LLC*, No. 7:18-cv-00147, Text Order dated July 22, 2020 (W.D. Tex.)[3] (denying

---

[3] A true copy of the *Continental Intermodal* decision is attached to the Rafilson Decl. as Exhibit B.

6

opposed motion to stay pending instituted IPR "for at least the following reasons: (1) ***The Court***
***strongly believes the Seventh Amendment*** . . . and (4) Plaintiff opposes the stay.") (emphasis
added); *Kerr Machine Co. d/b/a Kerr Pumps v. Vulcan Industrial Holdings, LLC* WDTX-6-20-
cv-00200, No. 6:20-cv-00200, Text Order dated Aug. 2, 2020[4] (denying opposed motion to stay
pending outcome of post-grant review ("PGR") proceeding "for at least the following reasons:
(1) The PTAB has not instituted the PGR. (2) ***Even if the PTAB institutes, the Court anticipates***
***that the trial date will occur before the PGR's final written decision***. . . . (4) ***The Court***
***believes in the Seventh Amendment***. (5) Plaintiff opposes the stay.") (emphasis added). In fact,
Judge Albright has never granted an opposed motion to stay in light of pending IPR or PGR
proceedings. *E.g., Multimedia Content Management LLC v. DISH Network LLC*, No. 6:18-cv-
00207, Dkt. No. 73 (W.D. Tex. May 30, 2019)[5] (denying motion to stay IPR where institution
decision had not issued yet). Having no chance at stay from the district court, the Movants are
seeking an end run stay from this Court to allow them to argue at the PTAB that it should
institute the IPRs because with a bankruptcy stay, the district court case will not be concluded
before the IPRs.

19.    By way of background, in the Intel Infringement Action, on August 3, 2020,
Judge Albright's law clerk sent the parties an email advising that trial was set for November 8,
2021.[6] If the PTAB grants Intel's request to institute IPR proceedings, its final written decision
will be due on or before March 17, 2022. *See* Trial Practice Guide, 77 Fed. Reg. 48756, 48757

---

[4] A true copy of the *Kerr Machine Co*. docket reflecting the text of the order is attached to the Rafilson Decl. as
Exhibit C.

[5] A true copy of the *Multimedia Content* docket reflecting the text of the order is attached to the Rafilson Decl. as
Exhibit D.

[6] A true copy of the email from Judge Albright's clerk dated August 3, 2020 advising the parties in the Intel
Infringement Action that trial is set for November 8, 2021 is attached to the Rafilson Decl. as Exhibit E.

(Aug. 14, 2012) (describing timeline); *see also Intel v. SRC*, IPR2020-01449, Paper No. 2

(stating that patent owner's preliminary response is due on or before November 17, 2020).

**D.**    **The Settlement between SRC and the Trustee.**

20.    On August 27, 2020, SRC and the Trustee executed a settlement agreement

("Settlement Agreement"). The terms of the Settlement Agreement are set forth in the Trustee's

Motion to Approve Settlement with FG SRC LLC and Affiliates [Docket No. 57 in Case No. 20-

10534 and Docket  No 52 in Case No. 20-10535]. Among other things, the Settlement

Agreement: (i) releases the estates' claims, if any, against SRC to avoid the transfer of the

Patents to SRC; and (ii) entitles the estate of Directstream LLC to 10% of the net recoveries on

claims brought by SRC against third parties involving patents, including the Patent Infringement

Actions.   The hearing on approval of the Settlement Agreement is set concurrently with the

hearing on the Stay Motions.

**ARGUMENT**

**I.**    **The Automatic Stay Does Not Apply to the Infringement Actions.**

21.    Section 362(a)(3) of the Bankruptcy Code automatically stays "any act to obtain

possession of property of the estate or of property from the estate or to exercise control over

property of the estate."  11 U.S.C. § 362(a)(3).  Although the Stay Motions do not cite the

specific sub-section Movants rely on, it is the only subsection of the statute that could

conceivably apply under Movants' theory that, because the transfer of the Patents might be an

avoidable transfer, the continuation of the Infringement Actions is "an act to obtain possession of

property of the estate or . . . exercise control over property of the estate."  11 U.S.C. 362(a)(3).

22.     The Movants purport to premise their argument that the automatic stay applies to the Infringement Actions on a Fifth Circuit decision from 1983 that has been discredited by two subsequent circuit court decisions and never adopted by the Third Circuit or by a Delaware bankruptcy court. Moreover, the decision is inapposite under the facts before the Court.  *In re MortgageAmerica Corp.*, 714 F.2d 1266 (5th Cir. 1983), the sole case Movants cite in support of their argument that the automatic stay applies to the Infringement Actions, only holds that fraudulent transfer actions initiated by a creditor prepetition are stayed after a bankruptcy filing because they are property of the estate.

### A.     *MortgageAmerica* Applies Only to Competing Avoidance Actions.

23.     In *MortgageAmerica*, before the filing of the involuntary petition, the creditor-plaintiff had brought state court fraudulent transfer actions against the corporate principal.  It sought to continue those actions post-petition. The issue before the court was whether the fraudulent transfer actions commenced by the creditor were stayed.  The Fifth Circuit found that actions by creditors to recover fraudulently transferred property are subject to the automatic stay:

> Actions for the recovery of the debtor's property by individual creditors under state fraudulent conveyance laws would interfere with this estate and with the equitable distribution scheme dependent upon it, and are therefore appropriately stayed under section 362(a)(3).  Any other result would produce near anarchy where the only discernible organizing principle would be first-come-first-served.

714 F.2d at 1276.

24.     The Fifth Circuit's holding is limited to "[a]ctions for the recovery of the debtor's property by individual creditors under state fraudulent conveyance laws."  *Id*. at 1276.  Collier, in its 15th Edition, notes limited nature of the decision:

> Once the petition is filed, any previously pending action brought by a creditor under state law to recover fraudulently transferred property for its benefit is

9

stayed pursuant to section 362 of the Code, and the trustee or debtor in possession may avoid the transfer for the benefit of *all* creditors.

5 COLLIER ON BANKRUPTCY ¶ 548.01, n. 4 (15th ed. rev.) (emphasis in original).

25.    *MortgageAmerica* does not apply to causes of action that do not belong to the

debtor:

> The opinion in *MortgageAmerica* stands for the proposition that, where a cause of action belongs to a corporation and is being asserted in a case brought by a creditor of the corporation, on the filing of a bankruptcy petition, the action is the property of the estate and the case is automatically stayed pursuant to section 362(a)(3).
>
> In this case, as noted above, the cause of action being asserted by the Shareholders is personal and does not belong to the corporation. The decision in *MortgageAmerica* does not therefore support the Estate's position that the Shareholders' claims should be enjoined.

*Reliance Acceptance Group, Inc. v. Levin (In re Reliance Acceptance Group, Inc.)*, 235 B.R.

548, 559 (D. Del. 1999).

26.    Movants' suggestion that *MortgageAmerica* holds that all property that

theoretically **may** be the subject of a fraudulent transfer action, even though the Trustee has not

filed (or even asserted) such claims is a gross overstatement. Moreover, the Movants' have not

presented evidence showing the estates have colorable fraudulent transfer claims to the Patents.

The Infringement Actions are not fraudulent transfer actions owned by the Debtors' estates. Nor

do they assert claims owned by the Debtors.  Accordingly, the limited holding of

*MortgageAmerica* is inapposite.

> **B.    The Second and Tenth Circuits and Numerous Other Courts Have Rejected the Language in *MortgageAmerica* that Unrecovered Fraudulently Transferred Property is Property of the Estate.**

27.    *MortgageAmerica* suggests that unrecovered, fraudulently transferred property is

property of the estate within the meaning of 541(a)(1):

10

The transferee may have colorable title to the property, but the equitable interest -- at least as far as the creditors (but not the debtor) are concerned -- is considered to remain in the debtor so that creditors may attach or execute judgment upon it as though the debtor had never transferred it. We think that when such a debtor is forced into bankruptcy, it makes the most sense to consider the debtor as continuing to have a "legal or equitable interest[]" in the property fraudulently transferred within the meaning of section 541(a)(1) of the Bankruptcy Code.

714 F.2d at 1275.

28.    The inclusion of unrecovered fraudulently transferred property as property of the estate under section 541(a)(1) has been rejected by most courts, because, among other things, such an interpretation renders section 541(a)(3) meaningless with respect to property recovered pursuant to fraudulent transfer actions.  *See*, *e.g.*, *In re Colonial Realty Co.*, 980 F.2d 125, 131 (2d Cir. 1992); *In re Fehrs*, 391 B.R. 53, 71-72 (Bankr. D. Idaho 2008); *In re Feringa*, 376 B.R. 614, 625 n.10 (Bankr. W.D. Mich. 2007); *In re Murray*, 214 B.R. 271, 278-79 (Bankr. D. Mass. 1997); *In re Saunders*, 101 B.R. 303 (Bankr. N.D. Fla. 1989).

29.    Where the trustee has taken no action to recover the alleged fraudulent transfer, courts consistently conclude that property that might be subject to a subsequent fraudulent transfer action is not property of the estate.  *See, e.g., Moyer v. ABN Amro Mortg. Grp., Inc. (In re Feringa)*, 376 B.R. 614, 625 n.10 (Bankr. W.D. Mich. 2007) (noting that "it is difficult to read Section 541(a)(1) so broadly as to include potential recoveries of fraudulent conveyances, especially in light of subparagraph[] (a)(3) . . ." (emphasis added)); *Wagner v. Christiana Bank & Trust Co. (In re Wagner)*, 353 B.R. 106, 112-13 (Bankr. W.D. Pa. 2006) (where a Chapter 7 trustee took no action to avoid an allegedly fraudulent transfer, the court noted that "for a claim to become 'property of the estate' a trustee must actually exercise her avoiding powers and make a tangible recovery of the property before it can be transformed into 'property of the estate' as envisioned by Section 541(a)(3)"); *Grossman v. Murray (In re Murray)*, 214 B.R. 271, 279

11

(Bankr. D. Mass. 1997) (finding the reasoning in *Saunders* to be "particularly compelling where, as here, no affirmative action had been taken to recover the funds at the relevant time").

30.    As the Second Circuit stated in *Colonial Realty*:

"If property that has been fraudulently transferred is included in the § 541(a)(1) definition of property of the estate, then § 541(a)(3) is rendered meaningless with respect to property recovered pursuant to fraudulent transfer actions." . . . Further, "the inclusion of property recovered by the trustee pursuant to his avoidance powers in a separate definitional subparagraph clearly reflects the congressional intent that such property is not to be considered property of the estate until it is recovered."

*In re Colonial Realty Co.*, 980 F.2d at 131 (quoting *In re Saunders*, 101 B.R. at 305).  In a more recent decision, directly addressing, and rejecting, Movants' position, the Tenth Circuit concluded that the Second Circuit's holding in *Colonial Realty* was correct, because otherwise "a mere allegation [of a fraudulent transfer] without any showing of merit" could bring property into the estate. *Rajala v. Gardner*, 709 F.3d 1031, 1038 (10th Cir. 2013).

31.    Similarly, courts within this circuit have found that "for a claim to become 'property of the estate' a trustee must actually exercise her avoiding powers and make a tangible recovery of the property before it can be transformed into 'property of the estate' as envisioned by Section 541(a)(3)."  *In re Wagner*, 353 B.R. 106, 112-13 (Bankr. W.D. Pa. 2006); *In re Rosenblum*, 545 B.R. 846, 854 (Bankr. E.D. Pa. 2016) ("Following [*Wagner*], this Court concludes that the filing of the State Litigation therefore does not implicate the automatic stay under § 362").

32.    If Movants' argument were accepted, third parties acquiring property from a debtor within four years of the petition (ten years if the IRS is a creditor on the date the petition is filed) could be stayed from enforcing their interests in such property against non-debtors upon

the mere allegation by the non-debtor that a trustee *might* bring an avoidance action to recover

the property.  Unsurprisingly, Movants have cited no authority in support of their argument.

## II.     The Court Should Not Extend the Stay Pursuant to its Section 105 Powers.

33.     Movants seek to enjoin prosecution of the Infringement Actions under section

105(a).

### A.     Injunctive Relief Under Section 105 Requires an Adversary Proceeding.

34.     As an initial matter, to seek extension of the stay under section 105, Movants

must commence adversary proceedings.  Fed. R. Bankr. P. 7001(7) (injunctive relief requires an

adversary proceeding); *In re Hart*, 530 B.R. 293, 308-309 (Bankr. E.D. Pa. 2015) ("Many courts

accordingly have held that a party must file an adversary complaint seeking the entry of a

separate injunction under § 105(a) in order to stay litigation against nondebtor third parties."); *In

re Irwin*, 457 B.R. 413, 423 (Bankr. E.D. Pa. 2011) (finding that the extension of the automatic

stay to nondebtor third parties "does not flow automatically from § 362(a)" and requires the

filing of an adversary proceeding); *In re Union Trust Philadelphia, LLC*, 465 B.R. 765, 771

(Bankr. E.D. Pa. 2011) ("most courts consider Section 105 of the Code as the appropriate source

of authority from which to fashion injunctive relief restraining the prosecution of third-party

litigation"); *see also In re Ripon Self Storage, LLC*, No. BAP EC-10-1325-HKID, 2011 WL

3300087, at *6 (B.A.P. 9th Cir. Apr. 1, 2011) ("[A]ny extension of the automatic stay to

nondebtors does not occur automatically but requires the filing of an adversary proceeding

requesting the bankruptcy court to act under § 105(a).").

### B.     Legal Standard for Section 105 Injunction.

35.     Even if the Court excuses the Movants' failure to initiate adversary proceedings,

the extension of the stay must be denied on the merits.  The source of the Court's power to

13

impose a stay of litigation against non-debtors derives from section 105(a) and the Court's authority to issue any order "necessary or appropriate to carry out the provisions of [the Bankruptcy Code]." *Lazarus Burman Assocs. v. Nat'l Westminster Bank USA (In re Lazarus Burman Assocs.),* 161 B.R. 891, 897 (Bankr. E.D.N.Y. 1993) (state court litigation by creditor against debtor's partners not restrained by section 362, such that authority, if any, must be found in section 105).

36.     A preliminary injunction "should be reserved for 'extraordinary' situations." *Adams v. Freedom Forge Corp.*, 204 F.3d 475, 487 (3d Cir. 2000) (*quoting Sampson v. Murray*, 415 U.S. 61, 82 (1974). "[T]he dramatic and drastic power of injunctive force may be unleashed only against conditions generating a presently existing actual threat." *Id.* (*citing Holiday Inns of America, Inc. v. B & B Corp.*, 409 F.2d 614, 618 (3d Cir. 1969)). A preliminary injunction requires explicit findings of fact and conclusions of law by the bankruptcy court. Failure to state such findings and conclusions is reversible error. *Fengler v. Numismatic Americana, Inc.,* 832 F.2d 745, 748 (2d Cir. 1987) (preliminary injunction vacated based on absence of factual findings to support relief).

37.     In determining whether to grant a stay under section 105(a), courts typically apply the traditional preliminary injunction standard or look to see if "unusual circumstances" are present. *See In re W.R. Grace & Co.*, 386 B.R. 17, 36 (Bankr. D. Del. 2008).

### 1.     A Section 105 Injunction is Impermissible Because the Debtors Are in Chapter 7 Proceedings and Reorganization is Not Possible.

38.     Under either the traditional preliminary injunction standard or "unusual circumstances" test, the purpose of extending the stay to non-debtors under section 105 must be consistent with the stay itself, meaning that it is to "suspend actions that pose a serious threat to a

14

corporate debtor's reorganization efforts." *In re Uni-Marts, LLC*, 405 B.R. 113, 127 (Bankr. D.

Del. 2009):

> The broader rule here is that a debtor's stay may extend to a non-debtor only
> when necessary to protect the debtor's reorganization. The threatened harm may
> be to needed debtor funds (e.g., when non-debtors are entitled to indemnification)
> or personnel (e.g., when debtor needs the services of non-debtors facing crushing
> litigation). The question is whether the action against the non-debtor is
> sufficiently likely to have a "material effect upon . . . reorganization effort[s],"
> that debtor protection requires an exception to the usual limited scope of the stay.

(quoting *Gray v. Hirsch,* 230 B.R. 239, 243 (S.D.N.Y. 1999); *Gerard v. W.R. Grace & Co. (In re*

*W.R. Grace & Co.*, 115 Fed. Appx. 565, 570 (3d Cir. 2004) (not precedential) ("The standard for

the grant of a stay is generally whether the litigation could interfere with the reorganization of

the debtor.") (citations and quotations omitted); *A.H. Robins Co. v. Piccinin*, 788 F.2d 994 (4th

Cir. 1986) (preliminary injunction granted to stay action against debtor's partners who were

raising funds for reorganization and action would impede injection of funds).

39.     Here, because the Debtors are liquidating in chapter 7 proceedings and no plan of

reorganization is possible, injunctive relief under section 105 is not available to Movants to stay

the Infringement Actions under either the "unusual circumstances" or traditional standards.

> **2.     The Traditional Standards for Obtaining Injunctive Relief under**
> **Bankruptcy Code Section 105(a) and Bankruptcy Rule 7065 are not**
> **met.**

40.     The traditional standard for issuance of a preliminary injunction requires

consideration of four factors: (1) a reasonable probability of eventual success in the litigation, (2)

irreparable harm if relief is not granted, (3) the possibility of harm to other interested persons

from the grant or denial of the injunction, and (4) the public interest.  *Reilly v. City of*

*Harrisburg*, 858 F.3d 173, 179 (3d Cir. 2017).

41.     Movants frame their requests for injunctions under section 105(a) under the standard for a preliminary injunction (Intel Motion, ¶ 18, Xilinx Motion, ¶ 16) but do not satisfy any of the requisite elements for a preliminary injunction.

>    a)     **Movants Fail to Demonstrate "Likelihood of Success" as There Is No Prospect of a Successful Reorganization in the Debtors' Chapter 7 Liquidation Proceedings.**

42.     In the bankruptcy context, the "likelihood of success" factor  requires consideration of the debtor's ability to successfully reorganize. *In re W.R. Grace Co.*, 386 B.R. 17;  *In re Excel Innovations, Inc.*, 502 F.3d 1086, 1095 (9th Cir. 2007); *Lyondell Chem. Co. v. CenterPoint Energy Gas Servs., Inc. (In re Lyondell Chem. Co.)*, 402 B.R. 571, 589 (Bankr. S.D.N.Y 2009); *Alert Holdings, Inc. v. Interstate Protective Servs., Inc*., 148 B.R. 194, 200 (Bankr. S.D.N.Y. 1992).  Movants acknowledge this but fail to address it.  Intel Motion at ¶ 20, Xilinx Motion, ¶ 17.  As the Debtors are liquidating in a chapter 7 proceeding, this factor does not exist.

>    b)     **There is No Risk of Imminent, Irreparable Harm to the Debtors' Estates.**

43.     In the bankruptcy context, courts construe the risk of "imminent, irreparable harm" to mean that there must be an imminent and substantial threat to the reorganization process posed by the action sought to be enjoined.  *Nev. Power Co. v. Calpine Corp. (In re Calpine Corp.),* 365 B.R. 401, 410 (S.D.N.Y. 2007)  ("[T]he threat to the reorganization process must be imminent, substantial and irreparable.") (citing *Hawaii Structural Ironworkers Pension Trust Fund v. Calpine Corp.,* 2006 U.S. Dist. LEXIS 92499 at *12-14 (S.D.N.Y. Dec. 20, 2006); *Brennan v. Poritz (In re Brennan)*, 198 B.R. 445, 452 (D.N.J. 1996) ("showing of irreparable ***to the debtor*** is a prerequisite to injunctive relief") (emphasis added).

16

44.     To satisfy their burden of proof on establishing irreparable harm to the Debtors,

Movants must demonstrate a "clear showing of immediate irreparable injury, or a presently

existing actual threat." *Acierno v. New Castle County*, 40 F.3d 645, 655 (3d Cir. 1994) (*quoting*

*Ammond v. McGahn*, 532 F.2d 325, 329 (3d Cir. 1976)).  The harm must be "imminent." *Punnett*

*v. Carter*, 621 F.2d 578, 587 (3d Cir. 1980). It must not be speculative and cannot occur in some

indefinite future.  *Adams v. Freedom Forge Corp.*, 204 F.3d 475, 488 (3d Cir. 2000). The nature

of the harm must be such that money damages alone cannot atone for it. *Kos Pharmaceuticals,*

*Inc.*, 369 F.3d at 727-28 (*quoting Pappan Enters., Inc. v. Hardee's Food Sys., Inc.*, 143 F.3d 800,

805 (3d Cir. 1998)); *GAF Corp. v. Johns-Manville Corp.,* 26 B.R. 405,418 (denying section 105

injunction because of insufficient showing or irreparable harm to the bankruptcy estate).

45.     Movants have not and cannot show that continued prosecution of the

Infringement Actions will result in an ***immediate adverse economic consequence*** to the Debtors'

estates.  In fact, as discussed immediately below, even in the very unlikely event that the

settlement between the estates' and SRC is not approved by this Court, the estates will benefit

from the continued prosecution of the Infringement Actions because the litigation is being

funded by SRC and the estates will be the beneficiary of the work done by SRC if the transfer of

the Patents is ever avoided.   Moreover, the Debtors are liquidating in a chapter 7 proceeding so

there is no threat to a reorganization as courts typically require (the diversion of resources,

dissipation of wasting insurance policies or the distraction of key personnel).  The absence of any

imminent, substantial, and irreparable threat to the Debtors' estates from the prosecution of the

Infringement Actions, standing alone, requires that the Court deny Stay Motions.

46.     Movants argue that the Court should enjoin the prosecution of the Infringement

Actions because <u>they</u> will allegedly suffer irreparable harm without an injunction. The purported

17

harm is that if Movants settle with SRC in consideration for an assignment or licensing of the patents, they may be sued by the Trustee as subsequent transferees under section 550(a). Intel Motion, ¶ 23, Xilinx Motion, ¶ 20.  The Settlement Agreement moots this argument because it precludes the Trustee from seeking to avoid and recover the transfer of the Patents. Moreover, the argument fails because  the alleged harm falls far short of the type of harm required for an injunction to issue.    Not only is the harm not to the estates, it is completely speculative. The purported harm is not the result of the prosecution of the Infringement Actions, but rather the result of how Movants may choose to structure a future settlement that will never occur.

### c)    The Relative Harm to SRC from an Injunction Outweighs Any Unspecified Harm to Movants in the Absence of an Injunction.

47.    The balancing of relative harms that each party may suffer from the grant or denial of an injunction is "arguably, the most critical element" of the four-prong injunction test. 2 COLLIER ON BANKRUPTCY ¶ 105.03[1].  The focus is on balancing the harm to the Debtors' estates compared to the harm to the party being enjoined. *Saxby's Coffee Worldwide, LLC v. Larson et al. (In re Saxby's Coffee Worldwide, LLC),* 440 B.R. 369 (Bankr. E.D. Pa. 2009). Here, Movants seek to protect themselves, rather than the estates from purported harm. Stay Motions, ¶¶ 22-23. The Stay Motions must fail for this reason alone. Indeed, Intel seeks to destroy the '867 patent in IPR proceedings, an action that benefits only the Movants.

48.    In any event, in balancing the harm to the estate against the harm to the parties to be enjoined, courts recognize that the analysis is fact-intensive.  In *Saxby's Coffee Worldwide, LLC*, the bankruptcy court engaged in an extensive analysis of the facts and parties in connection with a motion to stay litigation against various individuals and entities associated with the debtor.  The court observed: "The determination whether to grant or deny a §105 injunction is

18

intensely fact driven . . .  As with any request for entry of a traditional injunction, the outcome

tends to be driven by the debtor's ability or inability to marshal facts demonstrating that the

pending nonbankruptcy proceedings against the nondebtors pose a serious risk to its

reorganization and the court's assessment of the relative harms each side may suffer from the

grant or denial of the injunction request." *Id.* at 380.

49.     The court cautioned that the potential harm to the enjoined parties should not be

minimized. *Id.* 382.  After carefully parsing the facts presented following an evidentiary hearing,

the *Saxby's Coffee* court granted an injunction of litigation against three natural persons that

were shown to be substantially involved in the debtor's operations and reorganization, and the

court denied an injunction of litigation against three corporate entities as to whom the court

concluded there was no basis for finding that litigation posed a threat to reorganization. *Id.* at

380-85.  The *Saxby's Coffee* case demonstrates the need for individualized findings of fact

regarding any alleged harm to the estates.

50.     Even if the Court were to consider the purported harm Movants claim they will

suffer, it is illusory and does not outweigh the harm to SRC of indefinite delay. The injunctions

sought by Movants are for an indefinite time, and highly prejudicial to SRC.  *See In re Davis,*

730 F. 2d 176, 179 (5th Cir. 1984) ("Just as obviously, the bankruptcy proceedings are not likely

to conclude in the immediate future.  A stay hinged on completion of those proceedings is

**manifestly 'indefinite.'**") (citation omitted and emphasis added).  The requested injunctions are

not simply a pause of litigation or a respite for Movants.   They would foreclose all further

proceedings against them relating to the Patents for an indefinite period of time.  "Only in rare

circumstances will a litigant in one case be compelled to stand aside while a litigant in another

19

settles the rule of law that defines the rights of both." *Id.* at 178, quoting *Landis v. North Am. Co.,* 299 U.S. 248, 255 (1936).

51.     The open-ended stay sought by Movants will inflict substantial harm on SRC. SRC has legitimate, bargained-for claims against Movants which will be curtailed by an injunction.   Litigation delays create a far greater risk to the plaintiff than to the defendant as witnesses suffer memory loss and evidence and documents become less likely to be available with the passage of time.  The injunctions may ultimately preclude critical discovery from solvent non-debtors.  Finally, SRC and its counsel have invested time and money in the Infringement Actions, much of which is lost when a case is delayed indefinitely. The harm against SRC is even greater because SRC's district court case against Intel is currently set to outpace the IPR proceedings. If the district court case is stayed, the PTAB is far less likely to use its discretion to deny Intel's IPR petition. *See Fintiv,* IPR2020-00019, Paper 15 at 12-13. (Rafilson Decl., Exhibit A).

52.     Moreover, notwithstanding Movants' cynical pretention of seeking to safeguard the chapter 7 estates, continued prosecution of the Infringement Actions against Movants will advance rather than impede the estates' interests by developing the case against Movants if and when the Trustee seeks to avoid the transfer of the Patents  (if the settlement between the Trustee and SRC is not approved).

53.     The continued prosecution of the Infringement Actions will incentivize the parties to come to the negotiating table.  If the Infringement Actions are indefinitely enjoined, Movants will have little incentive to contribute to a settlement. Discovery in the Infringement Actions will establish the strength and value of  the claims which will also advance the settlement process as well as reducing the costs to the estates if and when the transfers of the Patents are avoided and

20

recovered (in the unlikely event the settlement between the Trustee and SRC  is not approved).

In addition, discovery will aid settlement negotiations with the Movants by providing the facts

and transparency necessary for successful negotiations and possible mediation.

> **d)** **The Public Interest in a Successful Reorganization Is Not Advanced by enjoining the prosecution of the Infringement Actions.**

54.      In the bankruptcy context, the "public interest" factor concerns the public interest

in completing reorganization.  *W.R. Grace & Co. v. Chakarian (In re W.R. Grace & Co.)*, 2008

Bankr. LEXIS 1048, *52 (Bankr. D. Del.  2008 ); *In re Phila. Newspapers*, LLC, 407 B.R. 606,

617 (E.D. Pa. 2009) ("the balance of the public interest in a successful bankruptcy reorganization

of the Debtor versus other competing societal interests also tipped in favor of the issuance of the

injunction.").

55.      Because the Debtors are liquidating in a chapter 7 proceeding, enjoining the

prosecution of the Infringement Actions cannot advance any public interest in advancing the

reorganization of the Debtors.

56.       Movants fail to establish a public interest in immunizing themselves from the

Infringement Actions.  Movants claim that a stay will promote "judicial efficiency" by

eliminating additional lawsuits to litigate the same infringement claims but fails to explain how

these additional lawsuits could manifest. Intel Motion, ¶ 29; Xilinx Motion, ¶ 25.  This purported

concern is illusory as the Trustee has given no indication he will not abide by the outcome of the

Infringement Actions.

57.      Movants also argue that a stay will allow the Trustee to investigate whether the

transfer of the Patents to SRC are avoidable without being burdened by the consequences of the

Infringement Actions.  This argument is mooted by the Settlement Agreement. Moreover, if the

DOCS_SF:104008.8 29173/001

Settlement Agreement is not approved, as discussed above at Section I.B.2.c., the prosecution of

the Infringement Actions by SRC, will advance rather than impair the estate's interests. In any

event the settlement between the Trustee and SRC moots this argument. Movants fail to

establish that they meet any of the factors weighed under the traditional test. Accordingly, there

is no basis under this standard for an injunction to be issued.

### 3.    No "Unusual Circumstances" Exist Requiring the Extension of the Stay to Movants.

58.    A bankruptcy court within the Third Circuit "may extend the automatic stay to a

non-debtor co-defendant in two situations: (1) where 'stay protection is essential to the debtor's

efforts of reorganization'; and, (2) where 'there is such identity between the debtor and the third-

party defendant that the debtor may be said to be the real party defendant and that a judgment

against the third-party defendant will in effect be a judgment or finding against the debtor.' The

second exception applies when the debtor 'would be forced to indemnify its co-defendants in the

event of an adverse verdict.'" *Int'l Union of Painters & Allied Trades Dist. Council No. 21*

*Health & Welfare Fund v. Serv. Painting, Inc.*, No. 18-3480, 2019 U.S. Dist. LEXIS 83446, at

*16 (E.D. Pa. May 16, 2019) (citing *Forcine Concrete & Constr. Co. v. Manning Equip. Sales &*

*Serv.*, 426 B.R. 520 (E.D. Pa. 2010) and quoting *McCartney v. Integra Nat. Bank North* 106

F.3d 506, 510 (3rd Cir. 1997).

59.    The first exception, "where stay protection is essential to the debtor's efforts of

reorganization," is inapplicable where, as here, the debtors are liquidating in a chapter 7

proceedings. *Forcine Concrete & Constr. Co.*, 426 B.R. at 523.

60.    The second exception to the general rule recognized by the Third Circuit allows

proceedings against non-debtor co-defendants of the debtor to be stayed "where 'there is such

identity between the debtor and the third-party defendant that the debtor may be said to be the real party defendant and that a judgment against the third-party defendant will in effect be a judgment or finding against the debtor.'" *McCartney,* 106 F.3d at 510 (quoting *A.H. Robins,* 788 F.2d at 999).  These cases usually involve situations in which the debtor would be forced to indemnify its co-defendants in the event of an adverse verdict. *See McCartney*, 106 F.3d at 510 (citing *In re Am. Film Techs., Inc.,* 175 B.R. 847, 855 (Bankr. D. Del. 1994); *Forcine Concrete & Constr. Co.* 426 B.R. at 52;  *In re W.R. Grace & Co.*, 386 B.R. 17 (Bankr. D. Del. 2008) (extending automatic stay to third party where the third party's liability was  alleged to arise from its dealings with debtors, implicated debtors' insurance, debtor had contractual indemnification obligations to third parties, and debtors would be required to defend actions against third parties). "However, where litigation is directed against a codebtor, such as a subsidiary or affiliate of the debtor or against a guarantor or other third party liable for the debts of the debtor, **courts have issued injunctions sparingly**."  3 COLLIER ON BANKRUPTCY ¶362.04 (emphasis added).

61.    Movants argue that SRC should be enjoined based on "unusual circumstances" pursuant to the Court's equitable authority under section 105(a) of the Bankruptcy Code.  Intel Motion, ¶¶31 -35, Xilinx Motion, ¶¶26 -29.  In order to show "unusual circumstances," Movants bear the burden of demonstrating (1) specific facts—namely that the nondebtor *and debtor* share an identity of interest such that the litigation against the nondebtor is essentially a suit against the debtor; or (2) that the litigation against the nondebtor will have an adverse impact on the debtor's ability to reorganize. *In re W.R. Grace & Co.*, 386 B.R. 17, 30 (Bankr. D. Del. 2008); *Le Metier Beauty Inv. Partners LLC v. Metier Tribeca, LLC*, No. 13-cv-4650, 2014 U.S. Dist. LEXIS

136152, at \*6 (S.D.N.Y. Sep. 25, 2014) (movant bears the burden).  Movants fail to satisfy their

burden.   None of the key factors required by the cases to find unusual circumstances are present.

62.     Movants argue that unusual circumstances exist because (i) there is an identity of

interest between the Debtors and SRC; (ii) the Infringement Actions could impact estate assets;

and (iii) the Debtors may be precluded from re-litigating issues due to collateral estoppel.  These

arguments are unsupportable and Movants fail to establish any immediate or irreparable threat to

reorganization as required for a preliminary injunction.

### a)     Movants Fail to Demonstrate a Unity of Interest *With the Debtors*.

63.     Movants assert that an identity of interest exists between the Debtors and SRC.

Intel Motion, ¶ 33, Xilinx Motion, ¶ 27.  Even assuming that to be true, Movants do not explain

why that matters. Intel and Xilinx are each entities with no legal relationship to the Debtors.

The authority relied on by Movants requires the debtor <u>and the non-debtor third party defendant</u>

(i.e., Movants) to have an identity of interest. The purported identity of interest between the

Debtors and the plaintiff is irrelevant. Movants rely on inapposite authorities based on vastly

different facts to support their unsupportable argument that the requisite "identity of interest"

exists. Intel Motion, ¶ 33, Xilinx Motion, ¶ 27.  Critically, Movants do not even allege that the

Debtors have indemnity obligations to them or offer any proof SRC's claims against them will

have a negative impact on the Debtors' estates or reorganization efforts.

64.     Movants' authorities are inapposite because they focus on the relationship

between the debtor and non-debtor defendant:

> (a)     In *W.R. Grace & Co.,* 386 B.R. at 29-30, the bankruptcy court
> extended the automatic stay to personal injury actions that
> would directly impact the bankruptcy estates based on
> contractual indemnification rights owed by the debtor to non-

debtor defendants under separate agreements that were produced and described.

(b)     In *Loewen v. Gilligan,* 2001 Bankr. LEXIS 2384 (Bankr. D. Del. June 15, 2001), the bankruptcy court extended the automatic stay to civil suits against certain of the debtors' former employees, having determined that under the facts alleged, basic principles of agency may make the debtors liable, even if movants only pursued the former employees.

(c)     In *A.H. Robins Co. v. Piccinin,*788 F.2d 994, 997-1008 (4th Cir.1986), the Fourth Circuit sustained the stay of Dalkon-Shield litigation in connection with the bankruptcy of its manufacturer after finding that the only non-debtor defendants that opposed the stay were entitled to indemnification by the debtor, which sufficed to show the requisite irreparable harm to the debtor.  The Fourth Circuit initially observed that an illustration of "unusual circumstances" justifying an extension of the automatic stay "would be a suit against a third-party who is entitled to absolute indemnity by the debtor on account of any judgment that might result against them in the case." *Id.* at 999 (citing *In re Metal Center,* 31 B.R. 458 (D. Conn. 1983) (stay of litigation denied as to non-debtor guarantor). The court affirmed an extension of the automatic stay on the grounds that the non-debtor defendants were entitled to indemnity under the corporate bylaws, as well as under an express contract, and because the non-debtors were named as additional insureds under the debtor's insurance policy, which was an asset of the estate.  *Id.* at 1007.

> **b)     Movants Fail to Demonstrate That Continued Prosecution of the Infringement Actions Will Have an Immediate Adverse Economic Impact on the Estates by Dissipating the Estates' Property**

65.     Movants argue, without authority or evidence, that the continued prosecution of the Infringement Actions "may have an adverse impact on the estates and distributions to creditors without the Trustee's input or oversite." Intel  Motion,  ¶34, Xilinx Motion ¶28. This argument is meritless.

66.     First, the fact that only Movants are complaining about the purported impairment to the estates and the Trustee is not speaks volumes. The reason for this is the prosecution of the

DOCS_SF:104008.8 29173/001

Infringement Actions will either benefit the estates (if the transfer of the Patents are avoided and recovered) or have no impact on the estate (if the transfer of the Patents is not avoidable).

67.    If the settlement between the Trustee and SRC is not approved and the Trustee decides to sue SRC to avoid and recover the transfer of the Patents, there are three possible outcomes, none of which impair the estate: (i) if the Infringement Actions are in process, the Trustee would become the plaintiff and real party in interest as the owner of the Patents; (ii) if SRC prevails in the Infringement Actions, the net proceeds recovered would be recoverable by the estates if the transfers of the Patents are avoided; or (iii) Movants successfully defend the Infringement Actions in which case there would be a binding judicial determination, with notice to the Trustee, that the asset has no value to the estates.

### c)    Movants' Purported Apprehension of the Alleged Risk of Collateral Estoppel to the Trustee Does Not Support a Stay.

68.    Movants ask the Court to enjoin the continued prosecution of the Infringement Actions based on their purported concern that the Trustee may be barred from relitigating the actions if SRC loses. The settlement between the Trustee and SRC, moots this argument. Even if the settlement is not approved, Movants acknowledge that the Trustee is aware of SRC's prosecution of the Infringement Actions and the Stay Motions and has determined not to take any position. Intel Motion, ¶ 39, Xilinx Motion, ¶ 33. Again, the Trustee's silence speaks volumes.

69.    Movants allege, without analysis or explanation that continued prosecution of the Infringement Actions will expose the Trustee to collateral estoppel and suggests that this could cause harm to the estate. Intel Motion, ¶¶34-35, Xilinx Motion, ¶¶ 28-29. No explanation is given on how, or under what circumstances, the estates could be harmed by collateral estoppel.

26

If general concerns regarding pending litigation were enough, creditors could never continue litigation against a debtor's co-defendants.  In *Queenie, Ltd. v. Nygard Int'l*, 321 F.3d 282, 288 (2d Cir. 2003), the Second Circuit specifically rejected fear of collateral estoppel as a basis for extension of the automatic stay:

> We have not located any decision applying the stay to a non-debtor solely because of an apprehended later use against the debtor of offensive collateral estoppel or the precedential effect of an adverse decision.  **If such apprehension could support application of the stay, there would be a vast and unwarranted interference with creditors' enforcement of their rights against non-debtor co-defendants.**

*Id.* (emphasis added).

70.    Moreover, as discussed above, the Trustee does not face any immediate risk of collateral estoppel if the Infringement Actions are prosecuted against Movants. The settlement, upon approval moots this issue. Even if the settlement is not approved, if the Trustee ultimately seeks to avoid and recover the transfer of the Patents to SRC, and succeeds in doing so, the Debtors' estates will be the beneficiaries of any recovery. Similarly, if Movants successfully defend the Infringement Actions, the Trustee will have saved the estates any legal fees that they might have incurred on litigation with no value.

## III.    Movants Lack Standing to Assert the Estates' Alter Ego and Successor Liability Claims.

71.    Movants request relief from the automatic stay to assert the estates' alter ego and successor liability claims is puzzling. Intel Motion, ¶¶ 36-37,  Xilinx Motion, ¶¶ 30-31. Movants concede that the claims belong to the estates. Therefore, relief from stay does not enable them to assert the claims because they do not own the claims or have standing to assert them.

DOCS_SF:104008.8 29173/001

**Conclusion**

72.     For all the reasons set forth above, the Court should deny the Stay Motions

because a stay will harm the estates rather than aid them.


Dated:  September 10, 2020               PACHULSKI STANG ZIEHL & JONES LLP


                                         */s/ Laura Davis Jones*
                                         Laura Davis Jones (DE Bar No. 2436)
                                         Kenneth H. Brown (admitted *pro hac vice*)
                                         Peter J. Keane (DE Bar No. 5503)
                                         919 N. Market Street, 17th Floor
                                         P.O. Box 8705
                                         Wilmington, DE 19899 (Courier 19801)
                                         Telephone:  (302) 652-4100
                                         Facsimile:  (302) 652-4400
                                         Email:     ljones@pszjlaw.com
                                                    kbrown@pszjlaw.com
                                                    pkeane@pszjlaw.com

                                         *Counsel to FG SRC LLC*


28